IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARK RODNEY SUNDERLAND,   )
                                          )
                Petitioner,      )    Case No. CV08-158-S-EJL
                                            )
v.                                   )    **MEMORANDUM DECISION**
                                          )    **AND ORDER**
JOHANNA SMITH, Warden, Idaho    )
State Correctional Institution,       )
                                          )
                Respondent.    )
_____)

Pending before the Court are several motions filed by Petitioner, as well as a

Motion to Dismiss filed by Respondent. Having fully reviewed the record, including the

state court record, the Court finds that the parties have adequately presented the facts and

legal arguments in the briefs and record and that the decisional process would not be

significantly aided by oral argument. Therefore, in the interest of avoiding further delay,

the Court shall decide this matter on the written motions, briefs and record without oral

argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

The background of this case was concisely set forth in the Idaho Court of Appeals'

Opinion of February 6, 2009:

> Sunderland was charged with aggravated battery, I.C. §§ 18-903(b)
> and 907(a), and battery upon a law enforcement officer, I.C. § 18-915.
> These charges stemmed from an incident in a bar wherein an intoxicated
> Sunderland grabbed the wrist of a waitress and pushed her, resulting in a
> broken wrist. During the ensuing arrest, Sunderland spit in the arresting

**MEMORANDUM DECISION AND ORDER  1**

officer's face.

> Sunderland, claiming he did not remember the events in the bar due to an alcoholic blackout and asserting that it was an accident, entered an *Alford*[1] plea to both charges.  Prior to his sentencing hearing, Sunderland moved to withdraw his guilty plea, claiming that his public defender coerced him into pleading guilty.  He also filed a motion to disqualify his public defender.  Both motions were denied and he was sentenced to a unified term of fifteen years with eight years fixed for aggravated battery and to a term of 365 days for battery upon a law enforcement officer, to run concurrently.

(State's Lodging D-7, Docket No. 26.)

In his federal habeas corpus action, Petitioner's first claim is that the prosecutor "coerce[d]" Petitioner's "attorney not to disclose or discuss witnesses with [him]." (Docket No. 4, p. 2.)  Petitioner's second claim is that the district court refused to appoint new counsel for him to help him withdraw his guilty plea after it was apparent that Petitioner's counsel had a conflict of interest.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### A.   Habeas Corpus Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing

---

[1]   *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

MEMORANDUM DECISION AND ORDER  2

Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has explained that to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should

**MEMORANDUM DECISION AND ORDER  3**

have controlled." *Id.*, 530 U.S. at 166.  However, a petitioner cannot prevail under the

unreasonable application clause "simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly."  *Williams*, 529 U.S. at 411.

Under AEDPA, "[f]actual determinations by state courts are presumed correct

absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322,

340 (2003); 28 U.S.C. § 2254(e)(1).  As a result, a state court decision "based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340;

28 U.S.C. § 2254(d)(2).

**B.    Witness Disclosure Claim**

Petitioner's first claim is that the prosecutor "coerce[d]" Petitioner's "attorney not to

disclose or discuss witnesses with [him]."  (Petition, p. 2, Docket No. 4.)   He further

alleges: "I have a right to know statements made by witnesses."  (*Id.*)  On post-conviction

review, the state district court construed this claim as one that Petitioner's defense counsel,

Anthony (Tony) Geddes, provided ineffective assistance of counsel in his provision of

information regarding witnesses to Plaintiff.

1.    Standard of Law

A criminal defendant has a constitutional right to the assistance of counsel under

the Sixth Amendment, made applicable to the states by the Fourteenth Amendment.

*Gideon v. Wainwright*, 372 U.S. 335 (1963).  In *Strickland v. Washington*, 466 U.S. 668

(1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation.  To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby.  *Id*. at 684.  Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id*. at 684, 694.  Specifically, in the context of a guilty plea, a defendant must show there is a reasonable probability that he would not have pled guilty but for counsel's error.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight.  *Id*. at 689.  The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id*.  The pertinent inquiry "is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable."  *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case.  466 U.S. at 697.  On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial.  *Id.*

**MEMORANDUM DECISION AND ORDER  5**

2.    Discussion

On June 16, 2005, Petitioner pled guilty to both criminal counts pursuant to an *Alford* plea. (State's Lodging A-1, pp. 34-35.) Petitioner argues that he did not want to plead guilty, but wanted to proceed to trial; however, Mr. Geddes, pressured him to plead guilty, telling him that he had no defense and that no one in the public defender's office wanted to pursue his case.

Several months prior to the guilty plea, on March 11, 2005, Ada County Prosecutor Greg Bower wrote a letter to Mr. Geddes, stating: "Per your request, I am forwarding a list of the witnesses and their contact information with the understanding that you will not disclose witnesses' last names, addresses and telephone numbers to the Defendant." Mr. Bower then provided information for Cornelia Andrews[2] (the bartender/waitress and victim), Dawn Blackwater (the woman at the bar who reported to Andrews that Petitioner had been harassing her), Theodore Moore (witness at the bar), Raymond Koenen (witness at the bar), Dr. Bothwell (St. Luke's ER doctor), and Dr. Stephen Care (Elks Rehab doctor). (Exhibit B to Petition, p. 14, Docket No. 4.) Mr. Geddes sent the public defender's investigator to obtain statements from these witnesses. In addition, Mr. Geddes asked the investigator to find a homeless man, "Indian Paul," who Petitioner believed could provide eyewitness testimony that the waitress' wrist had been broken as a result of an accident in the bar. The investigator interviewed Blackwater, Moore, Koenen, and "Indian Paul," and prepared a written summary of the interviews, which he provided to

---

[2] Elsewhere in the record she is referred to as Cornelia Anders.

**MEMORANDUM DECISION AND ORDER  6**

Mr. Geddes.  It also appears that Mr. Geddes had oral discussions about these witnesses with the investigator.

At the post-conviction evidentiary hearing, Mr. Geddes testified that he did not provide Petitioner with the State's list of witnesses.  (State's Lodging C-2, p. 47.) However, Mr. Geddes testified that he discussed the witness interviews with Petitioner extensively, and that Mr. Geddes' overall assessment was that Petitioner would be convicted at trial and subjected to a harsher sentence than if he pled guilty and took responsibility for the crimes.  (*Id*., p. 35-39.)  Petitioner testified that Mr. Geddes had not discussed the witnesses with him except to say that the one favorable witness refused to come to court to testify.  (*Id*. p. 49.)

On appeal of the post-conviction matter, Petitioner that the state district court made a clearly erroneous factual finding by determining that Mr. Geddes' testimony was credible, because the court failed to consider Mr. Bower's letter to Mr. Geddes.  Petitioner also argued that the state court incorrectly undertook a prejudice analysis instead of merely determining whether Petitioner would have proceeded to trial, given that Petitioner testified at the evidentiary hearing that he wanted to go to trial.  (State's Lodging D-3.)

The Idaho Court of Appeals cited the proper *Strickland/Hill* standard of law.[3] (State's Lodging D-7, p. 3.)  It chose not to address Petitioner's argument that the state district court improperly focused on the weight of the inculpatory evidence as opposed to

---

[3]  The Idaho Court of Appeal cited *Plant v. State*, 152 P.3d 629 (Idaho Ct. App. 2006) for the *Hill* proposition; *Plant* cites to *Hill*.  *See id*. at 633.

Petitioner's desire to go to trial in determining the prejudice prong.  Rather, the Idaho Court of Appeals concluded: "Sunderland has not shown by a preponderance of the evidence that the public defender's representation fell below an objective standard of reasonableness.  Therefore, the Court need not address prejudice, the second part of the *Strickland* two-part test."  (Court's Lodging, p. 5, Docket No. 47.)[4]

The Idaho Court of Appeals relied on the factual findings of the state district court to conclude that Mr. Geddes had not performed deficiently.  That court concluded: "Upon our thorough review of the record, the findings of the district court are supported by substantial and competent evidence and are not clearly erroneous.  Based on the findings particularly, that the public defender discussed the potential witnesses and their potential testimony with Sunderland prior to his change of plea, he has failed to meet the first part of the *Strickland* two-part standard that the attorney's performance was deficient."  (Court's Lodging, p. 5, Docket No. 47.)

After a review of the record, this Court agrees that Petitioner has failed to show deficient performance of defense counsel.  Mr. Geddes was an experienced criminal defense attorney.  He had made the public defender's office his career, and he had worked there for at least ten years prior to working on Petitioner's case.  (State's Lodging C-2, p. .)

Mr. Geddes investigated the witnesses on the prosecutor's list.  Written statement summaries were prepared by Mr. Geddes' investigators.  Mr. Geddes was familiar with the

---

[4]  This Court obtained and lodged its own copy of the 2009 Idaho Court of Appeals' opinion in Petitioner's post-conviction case because State's Lodging D-7 was missing page 5.

**MEMORANDUM DECISION AND ORDER  8**

content of the witness statements.  All of the witnesses either had testimony harmful to

Petitioner's defense or had no personal knowledge of the facts, with the exception of Mr.

Koenen.  Mr. Geddes testified that while some of Mr. Koenen's testimony was helpful

(that the incident may have been an accident), other testimony from Mr. Koenen was

harmful (that Petitioner slapped or hit the victim).  (State's Lodging C-2, p. 32; (State's

Lodging C-3 (witness statements).)

The Court sees no error arising to the level of deficient performance in Mr. Geddes'

decision to orally review the witnesses' potential testimony with Petitioner rather than

provide him with the full names and addresses of the witnesses or permit him to review the

written summaries of the statements prepared by Geddes' office.

A credibility issue arose at the post-conviction evidentiary hearing because Mr.

Geddes testified that he extensively reviewed the content of the witnesses' testimony with

Petitioner, and Petitioner testified that Mr. Geddes did not review the witnesses testimony

with him.  The state district court found Mr. Geddes' testimony credible, and Petitioner's

testimony not credible.  (State's Lodging C-1, p. 58; State's Lodging B-6, p. 2.)

Under AEDPA, "[f]actual determinations by state courts are presumed correct

absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. at

340; 28 U.S.C. § 2254(e)(1).  A state court decision "based on a factual determination will

not be overturned on factual grounds unless objectively unreasonable in light of the

evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. §

2254(d)(2).

**MEMORANDUM DECISION AND ORDER  9**

The Court concludes that the prosecutor's letter does not amount to either per se evidence of deficient performance, or clear and convincing evidence to counter the state court's decision to deem Mr. Geddes' testimony credible and Petitioner's not credible. Nor has Petitioner shown that the state district court and the Idaho Court of Appeals' opinions are objectively unreasonable because they did not focus on the letter. Mr. Geddes had extensive details to offer about the number of contacts he had with Petitioner (stating that Petitioner sometimes called him two or three times a day, and Mr. Geddes had to make a rule that he would accept only one call per day from Petitioner), contradicting Petitioner's testimony that Geddes had little contact with him.

In addition, contrary to Petitioner's testimony that Mr. Geddes did not want Petitioner's case and simply wanted to dispose of the case quickly, Mr. Geddes testified that he had, in fact, prepared for trial, and that is how he determined the evidence was unfavorable to Petitioner; that he liked being a public defender; that he liked Petitioner and had developed a relationship with Petitioner; and that he wanted to see Petitioner get the best outcome possible, which he believed was in the context of a guilty plea. (*Id*., pp. 39-40.) Mr. Geddes testified that he and Petitioner got along well, but they just disagreed as to the assessment of the evidence. (*Id*, pp. 38 & 44.)

Having particularly reviewed the transcript of the evidentiary hearing (State's Lodging D-2), the prosecutor's letter (Exhibit B to Petition, p. 14, Docket No. 4), and the written summary of the witness statements (State's Lodging C-3), the Court concludes that neither the state district court's opinion nor the Idaho Court of Appeals' opinion is "based

on an unreasonable determination of the facts in light of the evidence presented" at the evidentiary hearing.  28 U.S.C. § 2254(d)(2).  The Court further concludes that the decisions of the Idaho Courts did not "involve[] an unreasonable application of" *Strickland v. Washington*.  *See* 28 U.S.C. § 2254(d)(1).  Further, under these same standards, it was entirely appropriate for the Idaho Court of Appeals to consider only the deficiency prong of the *Strickland* test, rather than the prejudice prong of *Strickland/Hill*.  *See Strickland*, 466 U.S. at 697.

## B.    Conflict of Interest Claim

Petitioner's second claim is that the district court refused to appoint new counsel to help him withdraw his guilty plea after it was apparent that Petitioner's counsel had a conflict of interest.  (Petition, p. 2, Docket No. 4.)  Petitioner asserts: "I have a constitutional right to conflict free counsel to help me withdraw my guilty plea."  (*Id*.)

When a trial court is made aware of an attorney's actual or potential conflict of interest, the trial court must either appoint new counsel *or* take adequate steps to determine whether the risk is too remote to warrant appointment of new counsel.  *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978).  "[A]n actual conflict of interest means precisely a conflict that affected counsel's performance-as opposed to a mere theoretical division of loyalties."  *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (internal citation and punctuation omitted).  "Theoretical" conflicts of interests, *without more*, do not arise to the level of a Sixth Amendment violation.  Theoretical conflicts of interest include instances such as where an attorney has to choose between paying for expert fees from his own pocket and

going without the expert testimony, or where trial counsel advises a client to plead guilty

while waiving any post-conviction right to appeal ineffective assistance of counsel claims.

*Washington v. Lampert*, 422 F.3d 854, 872-73 (9th Cir. 2005) (citing *Williams v.*

*Calderon*, 52 F.3d 1465, 1473 (9th Cir. 1995)).[5]

     For Sixth Amendment purposes, prejudice is presumed "only if the defendant

demonstrates that counsel 'actively represented conflicting interests' *and* that 'an actual

conflict of interest adversely affected his lawyer's performance.'" *Burger v. Kemp*, 483

U.S. 776, 783 (1987) (internal citations omitted).  In other words, "[t]he client must

demonstrate that his attorney made a choice between possible alternative courses of action

that impermissibly favored an interest in competition with those of the client." *McClure v.*

*Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003).

     On August 30, 2005, Mr. Geddes filed a motion to disqualify his office, the public

defender, on behalf of Petitioner.  Mr. Geddes also filed a motion to withdraw Petitioner's

guilty plea on September 8, 2005, with the "just reason" as "Defendant maintains his

innocence and [] he felt pressured to plead guilty by his attorney." (*Id.*, p. 45.)  On

September 8, 2005, District Judge Mike Wetherell heard oral testimony from Petitioner

and from Mr. Geddes.  (State's Lodging A-4.)  It is at this stage that the conflict of interest

claim arose: when counsel was placed in a position to defend himself against Plaintiff's

---

     [5]  Though the source of clearly established federal law must come from the holdings of
the United States Supreme Court, circuit law may be persuasive authority for determining
whether a state court decision is an unreasonable application of Supreme Court precedent.
*Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER  12**

allegations of coercion.

It was also at this stage that the state court judge did what *Holloway* required: *either* appoint new counsel *or* take adequate steps to determine whether the risk is too remote to warrant appointment of new counsel.  *See* 435 U.S. at 484. After hearing Petitioner and his counsel and reviewing the record, Judge Wetherell issued a well-reasoned, well-supported memorandum decision and order denying Petitioner's request to appoint new counsel and withdraw his guilty plea on September 13, 2005.  (*Id.*, pp. 47-55.)  Later, Petitioner's claims were the subject of a post-conviction evidentiary hearing held on May 18, 2007, where Petitioner had new counsel to represent him.  (State's Lodging C-2.)

Petitioner presented essentially the same conflict of interest issue on direct appeal and in his post-conviction relief petition.  Sara Thomas, Petitioner's counsel on direct appeal, filed a motion requesting that the Idaho Court of Appeals take judicial notice of the pleadings and papers in the post-conviction matter, and the motion was granted. (State's Lodgings B-1 & B-6, p.2 n.2.)

On direct appeal, the Idaho Court of Appeals rejected the claim that Petitioner was denied conflict-free counsel and affirmed the conviction, finding that the district court concluded that Mr. Geddes "did not coerce or otherwise improperly pressure the petitioner into pleading guilty."  As a result, the Idaho Court of Appeals reasoned, no conflict arising to the level of a constitutional violation existed because the conflict of interest claim was based on the meritless coercion claim.  (State's Lodging B-6, p. 2 & 3.)

The result of the Idaho Court of Appeals' decision is not contrary to, nor an

unreasonable application, of United States Supreme Court precedent governing Sixth Amendment conflict of interest claims.  Even if one takes the position that an actual, not merely theoretical, conflict of interest existed when Plaintiff accused Mr. Geddes of coercion (regardless of whether there were grounds for that accusation), Plaintiff did not show that the conflict adversely affected Mr. Geddes' performance; chiefly, Mr. Geddes performed well throughout the case and at the sentencing hearing, and there is no indication in the record that a better alternative course of action was available but not pursued.  (State's Lodging A-5.)

Viewing the case as it was viewed by the state courts, this Court agrees that Petitioner did not bring forward adequate evidence in state court to show that Mr. Geddes exerted improper pressure on Petitioner that amounted to coercion.  At the oral argument on the request to withdraw the plea and obtain new counsel, Petitioner offered the following reasons supporting his requests: (1) Petitioner had written a letter to counsel stating that if counsel did not believe the incident was an accident, he should "get off my case"; (2) counsel informed Petitioner that there was a witness who supported his defense; (3) Petitioner informed counsel that a jailhouse informant said the victim had a bone disorder, and then counsel requested that the court appoint a medical expert but did not tell the court why the expert was needed; (4) that counsel persuaded Petitioner to plead guilty based on counsel's opinion that the evidence in the case showed he was guilty, even though counsel knew that Petitioner wanted to go to trial; and (5) counsel told him that no other lawyer in the public defender's office wanted his case.  (State's Lodging A-4, pp. 1-

**MEMORANDUM DECISION AND ORDER  14**

3.)

At the oral argument, Counsel responded to Petitioner's allegations with the following: (1) counsel had the witnesses tracked down and interviewed, but as to the content of the information obtained, "[t]hings just didn't work out from a defense perspective like Mark [Petitioner] hoped they would"; (2) counsel obtained all the medical records of the victim and "there was simply no basis that we could find to hire an expert"; (3) "based on all of the information that we had at the time, it was my advice for him to plead guilty" . . . based on counsel's "perspective that he would likely be convicted at trial based the evidence at hand and the lack of the defense witnesses that we were able to come up with"; and (4) counsel stated he would be "happy to file a motion on [Petitioner's] behalf to withdraw his guilty plea and prepare for trial.  We've done all the necessary investigation."  (State's Lodging A-4, pp. 4-5.)

The trial court denied both of Petitioner's motions, citing (1) the extent of the evidence against Petitioner; (2) the court's opinion that 90% of criminal attorneys would have given the same advice as Petitioner's counsel; and (3) and that Petitioner made numerous voluntary statements at the change of plea hearing that fly in the face of his assertion that he was coerced into pleading guilty–"that he was making the plea freely and voluntarily, that he believed it was in his best interests, that no one had forced him to enter the plea, and that he understood the nature of the plea as well as its possible consequences."  (State's Lodging A-1, pp.47-54.)

These same issues were probed again on post-conviction review.  This Court

**MEMORANDUM DECISION AND ORDER  15**

concludes that Petitioner had ample opportunity at the post-conviction hearing to bring forward all evidence pointing to a conflict of interest or coercion. Petitioner had new counsel to probe the mindset and actions of his former attorney. The state post-conviction court's decision that Petitioner's defense counsel was more credible than Petitioner is supported by the hearing transcript and is not unreasonable.

Petitioner has not demonstrated that "his attorney made a choice between possible alternative courses of action that *impermissibly favored an interest in competition with those of the client*." *McClure v. Thompson*, 323 F.3d at 1248 (emphasis added). Counsel made a compelling argument on behalf of Petitioner at sentencing, and there is nothing in the record to suggest that counsel was dilatory in trial or sentencing preparation.

Based on all of the foregoing, the Court concludes that the Idaho Court of Appeals' opinions affirming the conviction and affirming denial of post-conviction relief are not "based on an unreasonable determination of the facts in light of the evidence presented" at the evidentiary hearing. 28 U.S.C. § 2254(d)(2). The Court further concludes that the decisions of the Idaho courts were not contrary to or did not "involve[] an unreasonable application of" the Supreme Court precedent set forth above. *See* 28 U.S.C. § 2254(d)(1).

## C.    Conclusion

Great deference is to be afforded state court decisions that are amply supported by the factual record. Such is the case here. The Court concludes that Petitioner is not entitled to relief on either of his claims. As a result, his Petition shall be denied with prejudice.

## OTHER PENDING MOTIONS

### A.    Petitioner's Motion for Witness Appearance (Docket No. 29)

Petitioner requests that the Court require a witness, Attorney Eric Fredericksen, who works at the State Appellate Public Defender's Office, to testify at his hearing. Petitioner supplemented his Motion with a letter from Mr. Fredericksen, dated October 23, 2009.  (Docket No. 38.)  In the letter, Mr. Fredericksen states that he was Petitioner's appellate public defender, that he has no personal knowledge of Petitioner's case, and that everything he knows about Petitioner's case is contained in the briefing that is a part of the appellate record.  (*Id.*)  Because it is clear that Mr. Fredericksen has no personal knowledge of facts relevant to Petitioner's case beyond what is contained in the state court record, and because an evidentiary hearing in this case is not warranted, the Motion will be denied.

### B.    Respondent's Motion for Extension of Time to File Dispositive Motion (Docket No. 33)

Respondent requested an extension of time within which to file a dispositive motion.  Good cause appearing from the Affidavit filed in support of the Motion, the Court shall grant the Motion.  Respondent's Motion for Summary Judgment, filed September 21, 2009, will be considered timely filed.

**C.    Petitioner's Motion to Add Request for Damages (Docket No. 39)**

Petitioner requests that the Court award him $30,000 in damages if the Court concludes that Petitioner was unjustly incarcerated. Damages are not available in habeas corpus proceedings. Rather, if a person's conviction is overturned, he can follow the habeas corpus case with a civil rights action. However, a civil rights action cannot be filed until and unless the conviction is overturned. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). As a result, Petitioner's Motion will be denied.

**D.    Petitioner's Motion for Appointment of Counsel (Docket No. 30)**

Petitioner has requested appointment of counsel in this case. There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or an evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

On September 1, 2009, Petitioner alleged that when he was transferred between prison facilities, his legal files were taken from him. He states that he cannot proceed without his legal work, and that appointment of counsel is appropriate. Petitioner stated

that he wrote to the warden with no answer.  (Docket No. 30.)  On September 16, 2009, Petitioner received a letter from Warden Valdez, stating that the prison did not have possession of the file, and that he should contact his attorney for another set of copies. (Docket No. 50.)  Petitioner attached portions of his state appellate brief to the letter that he sent to the Court. (*Id.*)

After September 2009, Petitioner did not update the Court as to whether he obtained new copies of his legal file from his former attorney.  However, Petitioner did file a brief opposing summary judgment on October 13, 2009, making no mention of any hardship related to his files. Because Petitioner has not raised the issue again of his missing legal files, the Court assumes that this issue has been resolved and finds that this reason for requesting counsel appears moot.

In addition, Petitioner mentions in his letters to the Court (Docket Nos. 42 & 50) that his purpose in obtaining the legal file was to provide the Court with the state appellate briefing.  The Court, in fact, has received that briefing and has reviewed it and the remainder of the state court record.  The Court finds good cause does not exist to support an appointment of  counsel because Petitioner's claims lack merit under the strict habeas corpus standards of law.

**E.      Petitioner's Motion to Have Judge and Jury Decide this Case (Docket No. 44)**

Petitioner requests that a "judge and jury" decide his case.  A habeas corpus action is a review of state court proceedings, in which a jury is not involved.  If habeas corpus relief is issued, then a new jury trial may occur.  Petitioner's Motion is moot, given that

habeas corpus relief is unwarranted.

**F.     Petitioner's Motion for Release (Docket Nos. 45 & 46)**

Because the Court has determined that habeas corpus relief is not warranted,

Petitioner's Motion for Release and letter requesting the same must be denied.

**G.     Petitioner's Request that the Victim Give an Additional Statement**

In his Response to the Motion for Summary Judgment, Petitioner argues that at the

sentencing hearing, when the fifteen-year sentence was pronounced, the victim started

crying, saying, "No, do not do this to that man." (Petitioner's Response, p. 2, Docket No.

37.) Petitioner requests that the Court have someone phone the victim to "get at the truth."

*Id*., p. 4.

The state court record does not reflect that the victim gave any testimony to the

effect that it had been an accident or that Petitioner should not have been sentenced for the

crime. (State's Lodging A-4.) Rather, the victim's testimony focused on how extensively

she had been damaged by Petitioner's actions. (*Id*., pp. 4-5.) Sadness or disagreement

regarding the sentence is not the equivalent of a recantation of the allegations that

supported the conviction. In addition, the victim's letter to the state court judge regarding

an appropriate sentence for Petitioner stands in sharp contrast to Petitioner's allegations

about her off-the-record statements at sentencing. (See State's Lodging A-6.)

If a petitioner wishes to bring new evidence on federal habeas review that has not

been presented to the state courts, but he failed to develop the factual basis of the claims

in state court because of "lack of diligence or some greater fault, attributable to" him or his

counsel, then he must meet the requirements of § 2254(e)(2).  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  If he is not at fault for failing to present the evidence to the state courts, he can present the evidence on federal habeas corpus review without meeting the requirements of § 2254(e)(2).  *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).

Here, the state court did not have an opportunity to hear the victim's additional statements that were not a part of the official state court record. Petitioner knew of this information at the time of the sentencing hearing, but has waited until now to come forward with it.  He had full opportunity to bring it up at the post-conviction hearing.

As a result of his failure to exercise diligence during the state court proceedings, if Petitioner wishes to introduce new evidence in this action, he must meet the standard of § 2254(e)(2) and show that his claims are based either on a new retroactive rule of constitutional law or on a factual predicate that could not have been previously discovered through the exercise of due diligence, *and* that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  *See* § 2254(e)(2)(A)&(B).  This Petitioner cannot do.  Therefore, he cannot offer new evidence of what the victim said in response to the pronouncement of the sentence.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed.  28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484.   The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal.  *Miller-El*, 537 U.S. at 336.

Here, the Court has denied Petitioner's claims on the merits.  The Court finds that additional briefing on the COA is not necessary.  Having reviewed the record thoroughly,

**MEMORANDUM DECISION AND ORDER  22**

the Court concludes that reasonable jurists would not find debatable the Court's decision

on the merits of the claims raised in the Petition and that the issues presented are not

adequate to deserve encouragement to proceed further.  The facts underlying the claims

were well-developed in the state courts.  The Court again concludes that the state court

decisions are not unreasonable in fact or law, and the Court agrees with the outcome of

each claim.  The Court has carefully searched the record and reviewed the law

independently of  Respondent's briefing to satisfy itself that justice has been done in this

matter where Petitioner is representing himself pro se and has limited access to legal

resources.  As a result, the Court declines to grant a COA on any issue or claim in this

action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit,

Petitioner may file a notice of appeal in this Court, and simultaneously file a motion for

COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate

Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.  Petitioner's Motion for Witness Appearance (Docket No. 29) is DENIED.

B.  Petitioner's Motion for Appointment of Counsel (Docket No. 30) is
    DENIED.

C.  Respondent's Motion for Extension of Time to File Dispositive Motion
    (Docket No. 33) is GRANTED.  Respondent's Motion for Summary

**MEMORANDUM DECISION AND ORDER  23**

Judgment is considered timely filed.

D.      Petitioner's Motion to Add Request for Damages (Docket No. 39) is

        DENIED.

E.      Petitioner's Motion to Have Judge and Jury Decide this Case (Docket No.

        44) is MOOT.

F.      Petitioner's Motion for Release (Docket No. 46) is DENIED.

G.      Respondent's Motion for Summary Judgment (Docket No. 32) is

        GRANTED.  Petitioner's Petition is DISMISSED with prejudice.

H.      The Court will not grant a Certificate of Appealability in this case.  If

        Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to

        forward a copy of this Order, the record in this case, and Petitioner's notice

        of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED:  **February 9, 2010**

Honorable Edward J. Lodge
U. S. District Judge